379 So.2d 731 (1980)
STATE of Louisiana
v.
Dennis R. NALL.
No. 65124.
Supreme Court of Louisiana.
January 28, 1980.
*732 Martin L. Laird, III, Law Firm of Kramer & Laird, Alexandria, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., for plaintiff-respondent.
BLANCHE, Justice.[*]
Defendant, Dennis R. Nall, was arrested for the murder of Guy Kimball. His defense counsel filed motions entitled "Motion for a Preliminary Examination" and "Motion to Compel Compliance with Plea Bargain and Alternatively to Suppress for all Purposes any Evidence Obtained from the Defendant or any Other Person as a Result of Said Plea Bargain and/or Grant of Immunity." The plea bargain at issue provided that the state would reduce the charge against defendant to manslaughter and that defendant would receive a ten year sentence. In return for this agreement by the state, the defendant would agree to plead guilty to manslaughter, accept the ten year proposed sentence and further, give a confession which involved the participation in the crime of James Burgess. The defendant would also testify against James Burgess in the state's forthcoming prosecution of the said Burgess.
Following the hearing on these motions, the court ruled that the state had probable cause to hold the defendant, denied the defense motion to compel compliance with the plea bargain, but granted the alternative motion to suppress any evidence arising out of the plea bargain agreement. Defendant sought, and we granted, writs to determine the validity of the plea bargain, and the admissibility of a confession obtained as a result thereof.
The facts revealed in the record before us indicate that on March 8, 1979, Guy Kimball was shot to death in his home near Pineville, Louisiana. The police investigation of this homicide began to center on the defendant, Dennis Nall, and on April 5, 1979, he agreed to participate in a polygraph examination regarding his possible involvement in the offense. Following his failure of the test, Nall gave a statement to police officers in which he admitted that he had shot the victim after the victim had threatened him and attempted to force him, at gunpoint, to engage in unnatural sexual activities. Following this statement, defendant was arrested and charged with first degree murder.
Defense counsel, who had been retained to represent the defendant, had a chance meeting with one of the assistant district attorneys, announced the fact of his representation of the defendant, and discussed with the assistant district attorney the possibility of a plea bargain. After consultation with defendant, he again approached the assistant district attorney, and this time, told him what facts the defendant had represented to him as being the true facts surrounding his involvement in the crime. These facts revealed that Nall and James Burgess were burglarizing Kimball's house when Kimball unexpectedly returned. It was then that Burgess and defendant had shot him, but defendant claims that Burgess had been the one to actually kill Kimball and that after killing him, Burgess had turned his gun on Nall and forced him to fire another shot into Kimball's dead body.
After further discussions with the district attorney and following these amazing revelations, an agreement was reached between defense counsel and the assistant district *733 attorney, and accepted by defendant. This agreement, as related above, would permit the defendant to plead guilty to manslaughter in return for his confession and testimony against Burgess. This agreement had the final approval of a district judge.
Thereafter, and pursuant to this agreement, plaintiff did give a second statement to the police on April 30, 1979, but lo and behold, it was not the one that the assistant district attorney had counted on. The statement bore no resemblance to that which the defendant had given to defense counsel which in turn had been related to the district attorney and which, in fact, had formed the basis of their plea bargain. In this last statement, defendant related that he had actually hired Burgess to assist him in the murder of Kimball and that he had agreed to pay Burgess $10,000 for his services. The two then premeditated the crime, laid in wait for the victim and murdered him when he entered his home after work. Nall now claims that he had fired the first shot and that the motive for the crime was his romantic involvement with Kimball's wife.
After this statement was obtained and reviewed by the district attorney's office, the district attorney then withdrew from the agreement. Defendant filed the motions which are the subject of the matter now before us.
It is clear that there was an agreement between the defense counsel and the assistant district attorney and equally clear that it was based upon the defense counsel's representation that Nall had been forced to shoot a dead man.
A plea bargain is a contract between the state and one accused of a crime. Consent is one of the requisites for a valid agreement (contract). LCC art. 1779. One of the defects of consent which may vitiate an agreement is error. Art. 1819. Error may be of fact or of law. Art. 1820. The error of fact which can invalidate a contract "must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself." Art. 1823. Article 1824 states:
"Art. 1824. The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where the one was supposed to exist, or if it be falsely represented, there can be no valid consent."
In this particular agreement, the cause for the state's agreement was the diminished culpability of the defendant's participation in the victim's murder together with his testimony implicating James Burgess. Therefore, when the statement on which the defendant obtained the state's agreement turned out to be false, the agreement between the parties fell because of a failure of cause. Accordingly, we agree with the district judge in dissolving the agreement and relieving the state from its obligation under the plea bargain agreement.
Defense counsel has argued that the principles of immunity apply to the arrangement between himself and the assistant district attorney. Undoubtedly, immunity may be bargained for in any criminal proceeding, but immunity was not bargained for in this plea bargain agreement. The troublesome concept of immunity is one in which a witness is compelled to give testimony and, in return for this forced infringement on his Fifth Amendment right to remain silent, then either the government may agree to forego prosecution of that witness for any charge arising out of the information which he gives in his testimony (transactional immunity), or agree that no use may be made of the testimony or of any fruits of that testimony (use immunity), even if the witness is subject to some subsequent prosecution. Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Piccirillo v. New York, 400 U.S. 548, 91 S.Ct. 520, 27 L.Ed.2d 596 (1971); C.Cr.P. art. 439.1. The case at bar does not involve any compelled testimony, and the question *734 of immunity raised by defense is not validly applicable.
The trial judge in this case properly ruled that the statement which defendant Nall gave on April 30 must be suppressed because undoubtedly, when defendant gave the statement, he did so with the belief that the district attorney would honor their agreement to reduce the charge to manslaughter and accept his guilty plea. Under these circumstances, the statement could not be viewed as voluntary. The information learned from the statement and any fruits of the information cannot be used in any subsequent prosecution of the defendant.
AFFIRMED.
DENNIS, J., concurs with reasons.
SUMMERS, C. J., concurs in part and dissents in part and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur in the result reached by the majority, but I am troubled by the opinion's failure to analyze the case in any light other than the principles of contract law. While I agree that contractual principles may be helpful as analogies in deciding issues of fundamental fairness, ultimately the constitutional right of a person accused of a crime to fairness is wider in scope than that defined by the law of contract. Accordingly, constitutional decisions should not be made to turn in favor of the state, or give guidance to the decision of future cases, simply because of the niceties of contract law. See Cooper v. United States, 594 F.2d 12 (4th Cir. 1979).
SUMMERS, Chief Justice (concurring in part; dissenting in part):
I have serious misgivings concerning that portion of the majority opinion which declares that the statement of April 30 was involuntary. Moreover, in the absence of some inducement on the part of the State to bring about this April 30 statement I see no sound reason under the circumstances of this case to suppress the information obtained as a result of that statement.
Here the violation of defendant's plea bargain enables him to virtually insulate himself from prosecution. For when he disclosed the true facts of the offense the majority holds those facts cannot be used against him.
A more realistic inference to be drawn from the facts of this case is that these events were deliberate and designed, not involuntary, on the part of defendant.
NOTES
[*] Honorable Jesse N. Stone, Jr. served as Justice Ad Hoc in the vacancy created by the retirement of Tate, J.