539 So.2d 1199 (1989)
STATE of Louisiana
v.
Jimmie E. LEWIS.
No. 88-KK-1064.
Supreme Court of Louisiana.
March 13, 1989.
George Lewis Higgins, III, Higgins & Starling, for applicant.
William J. Guste, Jr., Atty. Gen., Eddie Knoll, Dist. Atty., David Lafargue, Asst. Dist. Atty., for respondent.
COLE, Justice.
Defendant Jimmie Lewis was charged with felony theft in Rapides Parish. With *1200 the assistance of counsel, he negotiated a plea bargain agreement with the Rapides Parish District Attorney and the U.S. Attorney for the Western District of Louisiana. Under this agreement, Lewis agreed to give "full and complete cooperation" to a state investigation of thefts of farm equipment and a federal arson investigation. In exchange, the state agreed to charge defendant with only a single count of misdemeanor theft or attempted theft and agreed not to use against defendant any information he provided or any evidence derived from such information. Thereafter, the Rapides Parish District Attorney came to believe defendant violated the agreement by not fully cooperating with the federal arson investigation, and thus decided the agreement was breached. As a result, Rapides Parish reactivated the initial felony charge. Additional theft charges were brought against defendant in other parishes, including Avoyelles Parish where the district attorney intended to use against defendant a statement he provided to Rapides Parish officials under the plea agreement. The defendant filed a motion to suppress and motion in limine, both of which were denied by the Avoyelles Parish trial court. The Court of Appeal found no error in the denial and defendant applied here.

ISSUE
The evidential issue before us is whether the Avoyelles Parish District Attorney can use the statement defendant made in conjunction with the allegedly breached Rapides Parish plea bargain agreement or whether the statement must be suppressed. Since the question is one of first impression under our law, we granted writs to consider the merit of defendant's claim.

FACTS
Defendant Jimmie E. Lewis was arrested in August of 1986 and charged in Rapides Parish with felony theft after the FBI identified him as a suspect in the theft of two horses and a horse trailer, which had been stolen in Harris County, Texas and brought into Louisiana. At the same time, the state sought defendant's cooperation in the resolution of twelve area tractor thefts.
The record shows the state was willing to plea bargain with defendant because of its "initial and primary concern" for recovery of two John Deere "48-40" tractors valued at between $125,000 and $135,000 each but insured for only $25,000 each. Since the tractors' owners were financially strapped, they could not afford to replace them and faced ruin without their recovery. Meanwhile, the U.S. Attorney for the Western District of Louisiana was conducting an investigation of arson and interstate theft and he believed defendant could provide him with information concerning these crimes.
Following two days of negotiation with the FBI, as investigative arm of the U.S. Attorney's office, and the Rapides Parish District Attorney's office, defendant agreed to plead guilty to one count of misdemeanor theft or attempted theft and to cooperate with both the state and federal investigations. The agreement was signed on August 26, 1986 by defendant and by the Rapides Parish District Attorney, who signed on behalf of the state and the U.S. Attorney. The next day, defendant left on a trip to Texas and Arkansas with two Rapides Parish detectives. The trip proved fruitful, for the two "48-40" tractors were recovered. After the three men returned to Louisiana, defendant gave several incriminating statements. Some of these were verbal and unrecorded; however, the record includes the transcript of a statement given by defendant on September 2, 1986.
In his statement, defendant said he and a friend were out looking for equipment to steal when they found the "48-40" tractors sitting in pastures near public roads with the keys left in the ignitions. The men drove the tractors to a more secluded location, painted them and ground off the serial numbers. They then loaded the tractors onto a truck defendant hired to carry them to a dealer in Arkansas who had agreed to buy them. Unexpectedly, the dealer went to the hospital, and defendant wound up *1201 receiving no payment and the tractors were eventually recovered in Texas.
In giving the statement, defendant also admitted the theft of another smaller tractor in LaSalle Parish and yet another in Avoyelles Parish. It is this latter theft, which netted him $12,000, for which defendant is now facing charges in Avoyelles and which is the subject of this application.
Despite these revelations by defendant, the state believes defendant breached the agreement because he denied responsibility for the arson of a Lincoln Versailles belonging to his former girlfriend, Denise Smith. Ms. Smith has provided a statement in which she alleges defendant set fire to her automobile after she complained to him about recurring mechanical difficulties she had with it. In the face of this allegation, defendant has consistently maintained he has not participated in arson despite questioning by the FBI and at the Avoyelles Parish trial court's suppression hearing. It is defendant's claim that Ms. Smith gave false evidence against him because she is unhappy over his refusal to marry her.
After the allegation was made known, the U.S. Attorney's office notified the Rapides Parish District Attorney that it believed defendant had failed to cooperate in the arson investigation and, hence, it did not consider the agreement valid. As a result, Rapides Parish decided it was not obliged to abide by the agreement and made plans to prosecute defendant for theft of the "48-40" tractors he helped recover. Defendant now faces a count of simple arson involving Ms. Smith's Lincoln and a count of possession of stolen things, in connection with the stolen horses and trailer. Finally, defendant faces the present charges in Avoyelles Parish, as well as other charges in Beauregard and LaSalle Parishes.
As for his understanding of the Rapides Parish plea agreement, defendant contends he provided evidence in the belief he was being granted immunity from prosecution not only in Rapides but in other parishes as well. He also contends he fulfilled his obligation under the agreement and gave evidence because he believed the agreement would protect him from being charged.
At the hearing on the motion to suppress, defendant testified he "understood the agreement had been made with everybody concerned; if I gave evidence, I was protected in all aspects. That was what was basically conveyed to me, because the agreement involved the State, the U.S. attorney, people like that."
The Rapides Parish District Attorney, on the other hand, contends that despite having signed the agreement on behalf of the state and the U.S. Attorney, he made it clear to defendant when the agreement was signed that he was unable to grant immunity from prosecution in other jurisdictions.
After the hearing on defendant's motions, the Avoyelles Parish trial court ruled defendant's statement to Rapides Parish officials admissible in the pending theft proceeding in Avoyelles Parish. The Court of Appeal affirmed that ruling without opinion. We must now consider defendant's argument that the statement he made in conjunction with the Rapides Parish agreement cannot be used against him at trial in Avoyelles Parish.

ANALYSIS
Defendant's principal argument is that information which is inculpatory and obtained through the plea bargain process is not "voluntary" and thus cannot be introduced by the state in a subsequent prosecution of the defendant who made the statements. U.S. Const. amend. V; La.R.S. 15:451; State v. Nall, 379 So.2d 731 (La. 1980).
In Bram v. United States, 168 U.S. 532, 542-43, 18 S.Ct. 183, 186-87, 42 L.Ed. 568 (1897) the Court said a confession is not voluntary if "obtained by an direct or implied promises, however slight, nor by the exertion of any improper influence...." This rule, while oft-cited, has not been liberally applied. United States v. Long, 852 F.2d 975, 977 (7th Cir.1988). Instead, "a review of the totality of the circumstances *1202 under which the statement was given is still required and any inducement offered to the defendant is but one fact, albeit an important one, in that anaylsis." Id. (citations omitted.)
Also relevant is La.R.S. 15:451, which provides:
Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of ... promises.
In spite of this provision, we have recognized "[u]ndoubtedly, immunity may be bargained for in any criminal proceeding..." Nall, 379 So.2d at 733. Thus, the Rapides Parish District Attorney's office could promise use immunity for defendant's statements within its jurisdiction as part of the plea bargain.
Plea bargaining has been recognized as an essential component of the administration of justice. "Properly administered, it is to be encouraged." United States v. Grant, 622 F.2d 308, 312 (8th Cir.1980). The Supreme Court has nevertheless refused to rule that every statement made as result of a plea bargain is inadmissible. Hutto v. Ross, 429 U.S. 28, 30, 97 S.Ct. 202, 203-04, 50 L.Ed.2d 194 (1976).
In Hutto, the defendant made a confession which was not required by and outside the scope of his plea bargain agreement. Although assured by counsel that he would receive the benefits of the agreement without a statement, defendant nevertheless confessed. When he later withdrew from the plea agreement, the Court held the statement admissible against him in a subsequent proceeding. Id. at 30-31, 97 S.Ct. at 203-04.
At the other extreme, it is well-settled that a guilty plea later withdrawn with leave of court is not admissible against a defendant at a later trial. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). On the basis of fundamental fairness, our own prior jurisprudence has held a defendant who was allowed to withdraw his guilty plea could not have that plea used against him. State v. Joyner, 228 La. 927, 84 So.2d 462 (1955).
This principle, along with the rule that statements made during the course of plea negotiations are inadmissible in subsequent proceedings, has been incorported into Fed. R.Crim.P. 11(e)(6) and into recently enacted La.C.Ev. art. 410. The wording of La. C.Ev. art. 410, which is modeled after the federal rule, provides:
[E]vidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
(1) A plea of guilty or of nolo contendre which was later withdrawn or set aside;
. . . .
(4) Any statement made in the course of plea discussions with an attorney for or other representative of the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn or set aside.
The rules serve to promote negotiated disposition of criminal cases by giving the defendant protection from involuntary self-incrimination at two ends of the plea-bargaining spectrum: while he is negotiating over the disposition of his case and while he is offering or entering a plea that is rejected or later withdrawn. United States v. Davis, 617 F.2d 677, 683 (D.C.Cir. 1979).
The rules also serve to "permit the unrestrained candor which produces effective plea discussions" between the government's attorney and the defendant acting pro se or his attorney. Fed.R.Crim.P. 11(e)(6) advisory committee notes (1979 amendment). However, federal courts have interpreted the rule literally in order to prevent expanding the rule beyond that purpose and to avoid the exclusion of "otherwise voluntary admission[s] to law enforcement officials ... made in the hope of obtaining leniancy by a plea." Id.
Thus, federal courts have held statements made by a defendant to federal agents after arrest in hopes of initiating a plea bargain are not subject to Rule 11(e)(6) exclusion and hence are admissible. See *1203 e.g., United States v. Davidson, 768 F.2d 1266 (11th Cir.1985); United States v. Ceballos, 706 F.2d 1198 (11th Cir.1983). It has also been determined that grand jury testimony given in reliance on a plea bargain is admissible where the defendants subsequently refused to plead in accord with the plea agreement. United States v. Davis, 617 F.2d 677 (D.C.Cir.1979); United States v. Stirling, 571 F.2d 708 (2d Cir. 1978).
What is clearly inadmissible under Fed. R.Crim.P. 11(e)(6) is information provided in the context of negotiation of a plea bargain agreement where the statements were made to a federal agent expressly authorized to negotiate with a defendant. United States v. Grant, 622 F.2d 308, 314 (8th Cir.1980). Thus, a statement made by the defendant to an unauthorized agent some two weeks after the plea agreement was finalized was not made in connection with the negotiations for the plea bargain and was, therefore, voluntary and admissible. Id. at 316-17.
Neither Fed.R.Crim.P. 11(e)(6) nor La.C.Ev. art. 410 would bar the introduction of defendant Lewis's statement, because, although given pursuant to the agreement, it was provided more than a week after the agreement was signed and thus not rendered "in the course of plea discussions." La.C.Ev. art. 410. On the other hand, defendant has provided substantial assistance to the Rapides Parish theft investigation and has not repudiated his agreement to plead guilty.
Significantly, Rapides Parish does not consider the agreement breached on grounds that defendant failed to cooperate with the state's investigation of theft. The state has, in fact, gotten from defendant what it was primarily seeking, i.e., recovery of the two "48-40" tractors and information concerning the theft of other equipment and the horses and trailer as well. Instead, the state declares the agreement breached because it asserts defendant has failed to cooperate with the federal arson investigation.
At least with respect to prosecution in Rapides Parish, we believe the plea bargain in this case had the effect of so-called "equitable immunity" whereby the state is required to honor an agreement when the record shows: 1) an agreement was made; 2) the defendant has performed on his side; and 3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government. Rowe v. Griffin, 676 F.2d 524, 527-28 (11th Cir.1982).
This, however, does not answer the narrow question of whether defendant's statement was voluntary for the purposes of prosecution in Avoyelles Parish. The issue of whether statements made in conjunction with a plea bargain in one jurisdiction could be admitted in subsequent proceedings in another jurisdiction was addressed in United States v. Long, 852 F.2d 975 (7th Cir. 1988). In that decision, the federal court allowed introduction of defendant's confession, given after a plea bargain agreement with the state, in a subsequent federal prosecution arising out of the same crimes. The prosecutor, however, had specifically rejected the defendant's attempt to negotiate immunity in other jurisdictions. In dismissing the defendant's argument that his statement was voluntary for state prosecution purposes but involuntary for purposes of the federal prosecution, the court said defendant's failure to anticipate that his conduct violated federal as well as state law, not wrongdoing on the part of state officials, led to his predicament. "[H]indsight realization that a deal was not as good as originally hoped for is not sufficient reason to suppress such evidence." Long, 852 F.2d at 978.
Unlike Long where immunity in other jurisdictions was specifically rejected, defendant Lewis apparently believed he was being granted immunity from prosecution in other jurisdictions. This belief was no doubt fostered by the Rapides Parish District Attorney's representation he was signing the plea bargain agreement on behalf of the State of Louisiana and the U.S. Attorney for the Western District of Louisiana.
*1204 The question here is akin to that raised in State v. Nall, 379 So.2d 731 (La.1980), where the defendant also negotiated a plea bargain, then did not fulfill the state's expectations. Defendant Nall was arrested for murder but claimed he shot the victim in self-defense. Subsequently, he told a different story and claimed someone else was responsible for the victim's murder. On the basis of Nall's claims of diminished culpability, defense counsel was able to negotiate a plea agreement, under which Nall agreed to testify against the man he identified as the perpetrator and to plead guilty to a reduced charge. After the agreement was signed, Nall told yet a third story whereby he revealed he actually hired and paid the other man to kill the victim. On review, we had to determine whether the plea bargain was still valid and whether the confession defendant gave in reliance on it was admissible.
We relied on contract principles to reach a decision in Nall, reasoning that a plea bargain is a contract between the state and one accused of a crime. Nall, 379 So.2d at 733. Such an approach has been looked upon with approval in the federal jurisprudence, especially where a promise of immunity from prosecution is at issue. See e.g., Rowe v. Griffin, 676 F.2d 524, 528 (11th Cir.1982). Although the code provisions we interpreted in Nall have been revised, their substance remains unchanged. Compare former La.C.C. arts. 1779, 1819, 1823-24 with current La.C.C. arts. 1927, 1948-50. Thus, the principles enuciated in that decision remain viable.
A long-standing rule of contract law is that consent of both parties is required for a valid contract. La.C.C. art. 1927. Consent may be vitiated by error, fraud, or duress. La.C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La.C.C. art. 1949. Finally, the Civil Code provides:
Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object..., or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation.
La.C.C. art. 1950.
In Nall, we found the cause for the state's agreement was its belief in defendant's diminished culpability together with his testimony implicating another. Therefore, when the statements on which the defendant obtained the state's agreement turned out to be false, the agreement fell because of failure of cause and the proper course was to dissolve the agreement and relieve the state from its obligation. Nall, 379 So.2d at 734.
Moreover, Nall had given his statement in the belief the district attorney would honor the agreement to reduce the charge to manslaughter and accept his guilty plea. Under those circumstances, we said the defendant's statement could not be viewed as voluntary and neither the information learned from the statement nor any fruits of the information could be used in any subsequent prosecution of the defendant. Id. at 734.
We believe the agreement between defendant Lewis and the Rapides Parish District Attorney can be dissolved for failure of cause, since both parties signed the agreement in the belief they had bargained for something other than what they were actually to get. The defendant provided evidence apparently believing he would be immune from prosecution in other jurisdictions, a guarantee the district attorney had no authority to make. Meanwhile, the state believed information concerning arson would be provided, which information defendant contends he is unable to provide since he asserts he has no knowledge of it. Considering the record as a whole, there has been failure of cause on both sides and, thus, the agreement should not stand.
Merely setting aside the agreement on the basis of contract principles does not address the larger issue of the extent of the state's constitutional obligations to this defendant. Commercial contract law may prove useful as an analogy or point of departure in construing a plea agreement. *1205 Blackledge v. Allison, 431 U.S. 63, 75 n. 6, 97 S.Ct. 1621, 1630 n. 6, 52 L.Ed.2d 136 (1977).
It is also clear, however, that commercial contract law can do no more than this, because plea agreements are constitutional contracts. The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the Due Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution.
Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 2689, 97 L.Ed.2d 1 (1987) (emphasis added).
In determining whether defendant's statement was given voluntarily, the "totality of the circumstances" inquiry requires the reviewing court to investigate and analyze "both the characteristics of the accused and the details of the interrogation." United States v. Grant, 622 F.2d 308, 316 (8th Cir.1980) (citations omitted). Based upon a complete review of all relevant considerations on the issue of voluntariness, the ultimate question must be answered of whether the statement was "the product of an essentially free and unconstrained choice" or the result of an overborne will. Id. at 316-17 (citations omitted).
This case is unlike Hutto v. Ross, supra, where defendant's statement was held voluntary. There the terms of the plea bargain did not call for a confession but defendant confessed anyway despite the advice of his counsel. Conversely, defendant Lewis signed a plea bargain agreement which required him to confess to "any and all related criminal offenses taking place within the jurisdiction of the United States of America and/or under the jurisdiction of the state of Louisiana...." In exchange the state promised that:

Anything, whatsover, that JIMMIE LEWIS communicates and/or conveys to law enforcement officers, in connection with this plea agreement, will not be used against him, nor any derivative evidence obtained as result of his cooperation will be used against him. (emphasis added).
While defendant might have expected he could be subject to subsequent prosecution in another jurisdiction, this promise assured him that any evidence he gave would not be used against him. It is contrary to reason to believe he would have given evidence against himself had he believed such evidence could later be used against him. Instead, he gave evidence in exchange for the state's promise of immunity and, thus, the statements were not voluntary.
Under the self-incrimination clause of the Fifth Amendment, evidence of guilt induced by a government promise of immunity is "coerced" evidence and may not be used against the accused. Shotwell Manufacturing Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963). For purposes of compelling testimony which otherwise would be privileged by the Fifth Amendment, all that is constitutionally required is a grant of use immunity. Kastigar v. United States, 406 U.S. 441, 458-59, 92 S.Ct. 1653, 1663-64, 32 L.Ed.2d 212 (1972). As a matter of fair conduct, the government is bound to honor its promises. United States v. Weiss, 599 F.2d 730, 738 (5th Cir.1979).
Thus, applying the totality of the circumstances test, U.S. v. Long, 852 F.2d 975, 977, we believe defendant's argument that use of the statement should be barred is even stronger than was Nall's. The record shows defendant's statements arose out of and were demanded by the agreement he made in an arm's-length negotiation with the state. The independent concerns of promotion of candor and protection of voluntariness of statements made during the process of plea negotiation are implicated in this case, since the defendant's statements were undoubtedly given in the belief the district attorney would honor his agreement to reduce the charge against him in exchange for the information.
Of additional importance is the fact that despite the best efforts of two attorneys over the course of two days, the agreement *1206 contained easily misinterpreted language. While the Rapides Parish District Attorney contends he agreed merely to recommend to other parishes that they abide by the agreement, the agreement itself refers to binding federal authorities in the Western District of Louisiana and "the state of Louisiana," as "evidenced by the signature of the duly authorized representative of the State of Louisiana...."
Most significantly, the record shows defendant complied substantially with the terms of the plea bargain agreement. While he may have disappointed some of the expectations placed upon him, he did not disappoint all of them and he did not unilaterally withdraw from the agreement by entering a not guilty plea to the misdemeanor charge in Rapides Parish. Compare United States v. Davis, 617 F.2d 677 (D.C.Cir.1979); United States v. Stirling, 571 F.2d 708 (2d Cir.1978).

CONCLUSION
Under the circumstances related, defendant's statements cannot be viewed as voluntary, thus, the information learned from them or any fruits of the information cannot be used in any subsequent prosecution of the defendant. We hold the lower courts were in error in holding the statements admissible and we reverse that determination. Since we set the agreement aside for failure of cause and for violation of fundamental constitutional fairness, we do not reach the question of whether the agreement was breached.
REVERSED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
The narrow issue before us is whether defendant's statements made in connection with a Rapides Parish plea bargain can be considered voluntary for purposes of an Avoyelles Parish prosecution. Defendant testified that he believed that the agreement had been made with the state of Louisiana and he was "protected in all aspects." The Rapides Parish D.A., on the other hand, testified that he made defendant and his counsel aware that he had no authority to make a statewide bargain and could only recommend that the statements not be used in other parishes. The trial judge, who had an opportunity to weigh the credibility of both witnesses, chose to believe the Rapides Parish D.A. The wording of the plea bargain agreement also supported the D.A.'s testimony:
Anything, whatsoever, that JIMMIE LEWIS communicates and/or conveys to law enforcement officers, in connection with this plea agreement, will not be used against him, nor will any derivative evidence obtained as a result of his cooperation be used against him. Furthermore, the Rapides Parish District Attorney's office will recommend to any and all other judicial districts that they follow and abide this agreement between parties. [Emphasis added.]
While the quoted language does suggest the plea bargain was broad in scope, the last sentence clearly indicates that the Rapides Parish D.A. can only recommend that the other parishes abide by the agreement. The majority notes that this agreement was drafted by two attorneys over the course of two days. It is difficult to believe that given such extensive negotiations, defendant's attorney would miss the significance of the word "recommend" in the agreement.
The facts of this case are similar to those in United States v. Long, 852 F.2d 975 (7th Cir.1988). Long argued that a statement made to state officials was involuntary for the purposes of a federal prosecution. The court held the statement voluntary for federal purposes:
That the state officials acted appropriately throughout, and the federal officials were not involved at all, supports the view that Long's disclosure was voluntary. Events proved fortuitous for the government, but just because the government's prosecution benefited from Long's ignorance, the defendant's mistake is not a sufficient reason to declare the confession involuntary.
*1207 Similarly, in the present case, the Rapides Parish D.A. acted properly and did not intentionally attempt to mislead defendant. No Avoyelles Parish officials were involved. Defendant's statements were therefore voluntary. Any mistaken interpretation of the agreement's scope was a product of defendant's own ignorance.
Hence, I consider the statements made in connection with the Rapides Parish plea bargain voluntary for purposes of the Avoyelles Parish prosecution.
Accordingly, I respectfully dissent.