734 So.2d 16 (1999)
STATE of Louisiana
v.
Alex HENNIS.
No. 98 KA 0664.
Court of Appeal of Louisiana, First Circuit.
February 19, 1999.
Writ Denied July 2, 1999.
*17 Hon. Doug Moreau, District Attorney, East Baton Rouge Parish, Baton Rouge, Louisiana, by John A. Cannon, Assistant District Attorney, for appellee State of Louisiana.
Robert J. Hildum, Baton Rouge, Louisiana, for defendant/appellant Alex Hennis.
BEFORE: FOIL, KUHN, and WEIMER, JJ.
KUHN, J.
Defendant, Alex Hennis, was charged by bill of information with aggravated burglary, a violation of La.R.S. 14:60. Defendant pled not guilty; and, after trial by jury, was found guilty as charged. Thereafter, defendant was charged, adjudged, and sentenced as a second felony habitual offender to imprisonment at hard labor for a term of forty years, running concurrently with defendant's sentence for his prior felony conviction for aggravated assault in Mississippi.[1] Defendant now appeals his conviction, urging four assignments of error.[2]
On the night of January 13, 1995, officers with the Baton Rouge City Police Department went to the residence of Richard Williamson and his wife, Iris Gloria Williamson, in Baton Rouge in response to emergency 911 calls made by Mrs. Williamson and a neighbor. Defendant, who had been shot by Mr. Williamson and was lying on the Williamsons' carport, was transported to the hospital where he was treated for gunshot wounds to the left shoulder and right buttock. Defendant's arrest followed about twelve days later, when he was released from the hospital.

ASSIGNMENT OF ERROR NO. 1
In this assignment, defendant contends that the trial court erred by failing to enforce a plea bargain agreement under which he agreed to plead guilty to the instant offense in exchange for a fifteen-year hard labor sentence to run consecutive to the sentence for an aggravated assault conviction in Mississippi as well as a promise by the state not to seek La.R.S. 15:529.1 habitual felony enhancement.
On the day trial began, prior to commencement of trial, the court conducted a hearing on a defense motion to either quash the multiple offender bill or enforce the alleged plea agreement. At the hearing, Defense Counsel James Manasseh asserted there was a completed plea bargain agreement, because defendant had accepted Prosecutor Brenda Creswell's plea bargain offer as alleged above.
Creswell took the witness stand and gave the following testimony. According to her, at a status conference on April 23, 1996, Manasseh rejected the state's plea bargain offer when Manasseh insisted that the fifteen-year prison term run concurrent to the Mississippi sentence. Specifically, Creswell testified that Manasseh told her at the status conference that "it will be concurrent, right?" Her reply was: "concurrent to what?" Manasseh responded: "Oh, we don't have an agreement then." Thereafter, Creswell never informed Manasseh or defendant that her offer was withdrawn. However, she testified she did not feel it was necessary to so inform them, since Manasseh had rejected her offer. Creswell further testified her understanding *18 of contract law was she did not have to leave her offer open indefinitely and Manasseh's rejection of the offer terminated the offer.[3]
In State v. Louis, 94-0761 (La.11/30/94); 645 So.2d 1144, the Louisiana Supreme Court stated the following:
In determining the validity of agreements not to prosecute or of plea agreements, the courts generally refer to rules of contract law. State v. Nall, 379 So.2d 731 (La.1980); State v. Lewis, 539 So.2d 1199 (La.1989). Contractual principles may be helpful by analogy in deciding disputes involving plea agreements. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); Cf. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). However, the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws. State v. Nall, 379 So.2d at 734 (Dennis, J., concurring). Moreover, commercial contract law can do no more than to serve as an analogy or point of departure, since "plea agreements are constitutional contracts." Ricketts v. Adamson, 483 U.S. at 16, 107 S.Ct. at 2689, 97 L.Ed.2d 1. The Court further stated in Ricketts:

The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the due Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution.
483 U.S. at 16, 107 S.Ct. at 2689.
State v. Louis, 94-0761 at pp. 7-8; 645 So.2d at 1148.
After hearing the arguments and evidence presented at the hearing, the trial court denied the defense motion seeking to quash the bill of information or, alternatively, to enforce the alleged plea agreement. In doing so, the trial court noted defendant had not pled guilty to the instant offense, there was nothing to enforce, and sentencing was a matter yet to be determined by the court.[4]
We find no abuse of discretion by the court in its denial of the defense motion. Based upon Creswell's testimony, it is clear her offer was rejected by Manasseh. Creswell's revocable offer, once rejected, could not be revived by any subsequent purported acceptance, because there was no meeting of the minds of the parties and no longer an offer to accept. See Teague v. Ashy, 278 So.2d 516, 518 (La.App. 3d Cir.1973). Furthermore, the sentencing function was exclusively within the province of the court's authority and, even if the parties had agreed to a specific sentence, the court, which had not agreed to abide by any such agreement, retained the discretion to reject such an agreement. See State v. Manchester, 545 So.2d 528, 529 (La.1989); State v. Collins, 359 So.2d 174, 176 (La.1978).[5]
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, defendant generally contends that La.C.Cr.P. arts. 716 through 723 providing for discovery by the defense in a criminal case are unconstitutional *19 under the equal protection clauses of the Louisiana and United States Constitutions, because there is no rational basis for the disparity between the narrow limited discovery provided in those articles and the discovery available in a civil case under Louisiana law.
The state correctly points out that defendant did not challenge the referenced articles at the trial court level and argues that the contemporaneous objection rule of La.C.Cr.P. art. 841 precludes our review of the defense challenge of the articles. However, to the extent that the attack of the articles is leveled at the constitutionality of the articles on their face rather than as applied to defendant, compliance with the contemporaneous objection rule was unnecessary. Thus, we will address only the asserted facial unconstitutionality of the articles. See State v. Lee, 364 So.2d 1024, 1030 n. 4 (La.1978).
Statutes are presumed to be valid; whenever possible the constitutionality of a statute should be upheld. State v. Gamberella, 633 So.2d 595, 601 (La.App. 1st Cir.1993), writ denied, 94-0200 (La.6/24/94); 640 So.2d 1341. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. State v. Denomes, 95-1201, p. 5 (La.App. 1st Cir.5/10/96); 674 So.2d 465, 468, writ denied, 96-1455 (La.11/8/96); 683 So.2d 266.
The state and federal constitutional guarantees of equal protection mandate that state laws affect alike all persons and interests similarly situated. State v. Brown, 94-1290, p. 6 (La.1/17/95); 648 So.2d 872, 876. Regarding the equal protection analysis, (quoting Grider v. Administrator, Dep't of Employment Sec., 564 So.2d 751 (La.App. 2d Cir.1990)), the Brown Court stated:
[w]hen a state law does not classify individuals by race, religion, birth, age, sex, culture, physical condition, or political ideas, but does so on any other basis, Art. 1 § 3 of the Louisiana Constitution commands the court to decline the enforcement of the statute whenever a member of the disadvantaged class shows that the classification does not suitably further any appropriate state interest.
State v. Brown, 94-1290 at p. 6, 648 So.2d at 876.
Thus, absent any suspect or intermediate classifications under the equal protection analysis, a defendant must show that the legislative classification is not rationally related to a legitimate state purpose. State v. Brown, 94-1290, at p. 6; 648 So.2d at 876.
There is no general constitutional right to discovery in a criminal case, and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) did not create one. Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977).
Similarly, we find no tension between the discovery procedures of the challenged articles of the Code of Criminal Procedure and the equal protection guarantees of the United States and Louisiana Constitutions. We flatly reject defendant's contention that there is no rational basis for the disparity between the discovery available under our state procedures in criminal and civil cases. In our view, those differences in discovery procedures are rationally based and, thus, the challenged Code of Criminal Procedure articles do not in any way violate the equal protection clauses of the United States or the Louisiana Constitutions.
Consequently, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, defendant contends the evidence is insufficient to support his conviction of aggravated burglary. Specifically, defendant claims the evidence did not prove the element of unauthorized entry. Defendant asserts that there was no *20 physical evidence to corroborate Mr. Williamson's testimony that defendant actually entered the Williamsons' residence, noting that (although Mr. Williamson claimed to have shot defendant inside the house) defendant's blood was not found inside the residence. Thus, defendant concludes the evidence at most proved an attempted aggravated burglary.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged and defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See State v. Brown, 594 So.2d 372, 384 (La.App. 1st Cir.1991), writ denied, 596 So.2d 552 (La.1992). See also La.C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
The aggravated burglary statute, La. R.S. 14:60 provides, in part:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
The accused must have had the specific intent to commit either a felony or a theft at the time of his unauthorized entry. See State v. Jones, 426 So.2d 1323, 1325 (La.1983). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Moore, 477 So.2d 1231, 1234 (La.App. 1st Cir.1985), writs denied, 480 So.2d 739, 741 (La.1986).
Mrs. Williamson testified on the night in question, after hearing the doorbell ringing, she went to the washroom, looked outside, and saw a seedy-looking man wearing overalls, a coat, and a hat pulled down over his ears. She then went to the kitchen door and asked the man what he was doing. The man told her his car had broken down and that he wanted to use the telephone and needed to see her husband. Mrs. Williamson did not open the door but told Mr. Williamson about the man.
Mr. Williamson testified that he retrieved his .357 magnum revolver and placed it inside his belt at his back. Mr. Williamson then went to the kitchen door. The man, whom Mr. Williamson identified at trial as defendant, repeated that his car had broken down and that he wanted to come inside and use the telephone. Mr. Williamson told defendant he could not come inside but he would hand defendant the telephone to use. Mrs. Williamson yelled to her husband not to open the door, but to no avail. The moment Mr. Williamson unlocked the interior door and the exterior storm door to hand defendant the *21 telephone, defendant hit the interior door with his shoulder and came barreling into the kitchen, knocking down Mr. Williamson and Mrs. Williamson who was standing behind her husband. Inside the kitchen, defendant began striking Mr. Williamson about the face with a pistol. Mrs. Williamson grabbed the hand defendant was using to wield the pistol. According to Mr. and Mrs. Williamson, the pistol fired once.
Mr. Williamson testified he was struggling to remove his revolver from his belt during the attack. When Mr. Williamson pulled out the revolver while on the floor on his back, he fired a shot at defendant. Defendant dropped his pistol and started exiting the kitchen door. Mr. Williamson fired a second shot while defendant was in the doorway. When defendant got outside, he staggered and fell on the ground under the carport. Mr. Williamson followed and held his gun on defendant. Mrs. Williamson made an emergency 911 call.
While Mr. Williamson waited for the police to arrive, a car came around the corner with lights out and no license plate. The car paused at the Williamsons' driveway momentarily before taking off, and when it got well down the street the lights were turned on.
Based on the evidence in this record, we disagree with defendant's assertions that there was no physical evidence to substantiate Mr. Williamson's claim of entry into his home by the defendant. To the contrary, Mrs. Williamson's testimony corroborated Mr. Williamson's account concerning defendant's entry. Additionally corroborative of Mr. Williamson's testimony was the 9 millimeter pistol, which was found by the police on the kitchen floor and identified by Mr. Williamson as the weapon defendant used to beat him.
Although defendant relied on the absence of blood inside the house to support his claim that no entry occurred, testimony was given by several witnesses explaining the absence. Mr. Williamson and Baton Rouge City Police Det. Percy Singleton, who investigated the offense, each testified that the clothing defendant was wearing could have absorbed blood from defendant's wounds. Pat Lane, an expert in forensic science, testified that it was absolutely reasonable that someone could be shot twice with a .357 magnum handgun and leave a room within a few seconds and not leave any blood in the room. In giving this opinion, Lane stated that blood from a gunshot wound would have to get past the absorbent layer of clothing a person might be wearing. Furthermore, viewing photographic evidence of the crime scene depicting damage to the kitchen door and another surface in the kitchen and a bullet fragment found on the kitchen floor, Lane opined that the damage was consistent with an upward trajectory shot fired by someone from a lower level in the kitchen.
After viewing all the evidence in the light most favorable to the prosecution, we are convinced that any rational trier of fact could have concluded beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that all of the elements of aggravated burglary and defendant's identity as the perpetrator were proven. Consequently, this assignment is without merit.

CONCLUSION
For the reasons set forth herein, defendant's conviction is affirmed.
CONVICTION AFFIRMED.
NOTES
[1] Evidence presented at the habitual felony hearing revealed that defendant had escaped from the Mississippi Department of Corrections without completing the sentence for his aggravated assault conviction.
[2] Defendant's assignment of error number four, relating to his second felony habitual offender adjudication, was addressed in his separate appeal of the habitual offender adjudication and sentence. See State v. Hennis, docket number 98 KA 0665, 727 So.2d 16, also decided this date.
[3] The only evidence presented by the defense was the testimony of Robert Monahan, a paralegal whose testimony does not support or refute the facts as related in Creswell's testimony.
[4] Earlier during the hearing, the court noted it had never agreed to abide by any alleged agreement for a fifteen-year sentence.
[5] Consequently, any plea bargain agreement between the state and a defendant concerning a sentence to be imposed in exchange for a guilty plea would more appropriately be in the form of a promise to recommend to the sentencing court a sentence, sentencing range, or sentencing cap rather than a promise of a particular sentence, sentencing range, or sentencing cap.