CHEHARDY, C.J.
liOn appeal, defendant challenges his convictions for attempted second degree murder, felon in possession of a firearm, and home invasion. For the following reasons, we affirm defendant’s convictions and sentences but remand for correction of the uniform commitment orders.
Procedural history
On June 5, 2014, the Jefferson Parish District Attorney filed a bill of information charging defendant, Danny D. Saulny, with the attempted second degree murder of Erica Poret, in violation of La. R.S. 14:30.1 and La. R.S. 14:27. On March 2, 2015, the State filed a superseding bill of information charging defendant with the attempted second degree murder of Erica Poret, in violation of La. R.S. 14:30.1 and La. R.S. 14:27; possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1; and home invasion, in violation of La. R.S. 14:62.8.
On June 21, 22, and 23, 2016, the case was tried before a twelve-person jury, which found defendant guilty as charged. On July 18, 2016, the trial judge sentenced defendant, for attempted second degree murder, to fifty years at hard labor without benefit of parole, probation, or suspension of sentence; for possession of a firearm by a convicted felon, twenty years at hard labor without benefit of parole, probation, or suspension of sentence; and, for home invasion, twenty-five years at hard labor, to all run concurrently.
On September 16, 2016, the State filed a bill of information alleging that defendant was a second felony offender. After a hearing that day, the trial judge found that the State had presented sufficient proof that defendant was a second felony offender. The trial judge vacated the original sentence for attempted second degree murder and imposed an enhanced sentence of seventy-five years at hard Rlabor, without benefit of probation or suspension of sentence, to run concurrently with the sentences on counts two and three. Defendant verbally moved to appeal.
Facts
At trial, Erica Poret testified that, in January of 2014, she was living with her cousin’s family at 117 Madeira Drive in Avondale. On the night of January 13, 2014, she was cooking dinner in the kitchen when two armed African-American men kicked in the locked front door and entered the apartment. Ms. Poret recognized one of the men as “Noonie,” who she had known for many years, since they were in grade school together. Noonie was later identified as defendant-herein.
Ms. Poret recalled that, after the men entered, defendant said, “b*tch, come here and give me everything you got.” When she reached defendant, he threw her onto the ground then dragged her by her hair toward the kitchen as the other man kicked her. After more physical abuse, the intruders dragged her down the hallway into a bedroom. Defendant again demanded “everything she had,” so Ms. Poret gave him a wallet she found in the dresser drawer. Defendant told his accomplice to shoot Ms. Poret then defendant himself shot Ms. Poret in her right cheek.
Ms. Poret recalled that, defendant and the other man kept shooting her. Ms. Po-ret tried to fight but had sustained several gunshot wounds. She heard defendant pull the trigger again, but nothing came out. Ms. Poret testified that she could not move *874 and that she heard defendant say, “I think she is dead let’s go.” After she heard them leave, she stood' up, stumbled, and ran as best as she could to her neighbor’s house. Ms. Poret recalled walking into her neighbor’s house then collapsing. When the neighbors asked her to name the shooter, she told them “Noonie” several times. At trial, Ms. Poret testified that she was “a million percent certain” that defendant was one of the two individuals that shot her on January 13, 2014.
| ¡¡Cory Poche, who was a deputy with the Jefferson Parish Sheriffs Office (“JPSO”) on January 13, 2014, responded to a call for service at 133 Madeira Drive. Deputy Poche testified that he was advised there was a female bleeding from the mouth and dying there. When he approached the front door, he noticed there was a blood trail from the front door leading through the house to the victim in the hallway. Deputy Poche testified that the victim had multiple gunshot wounds and blood all over her, and she was in and out of consciousness. Once the medical personnel arrived and stabilized the victim, he was able to talk to her. While in the ambulance, he asked Ms. Poret who shot her and she mumbled the name “Noonie,” which he heard clearly. While on the scene, he learned that the shooting had occurred at 117 Madeira, which was about four houses down on the same side of the street.
Dr. Alan Marr, a trauma surgeon at University Hospital, was qualified as an expert in the field of trauma, surgical, and critical care. Dr. Marr testified that he treated Ms. Poret when she came into the emergency room at University Hospital, He recalled that she had sustained multi-pie ballistic wounds to multiple, areas of her body, including her face, neck, chest, and extremities.[1] He explained that she had internal injuries from the gunshot wounds, including injuries to her hypo-pharynx where the esophagus started and to her carotid artery, the main artery bringing blood to the brain. Dr. Marr asserted that the victim underwent multiple surgeries by him, a vascular surgeon, and a specialist in facial reconstruction. He testified that initially she was not able to walk, talk, or eat on her own, and, during that long period of recovery, he saw her daily while she was at the hospital. He described her wounds as “horrible and life threatening” and thought she was a “severely traumatized individual,”
|4In January of 2014, Deputy Gerald Fa-valoro of JPSO was assigned to the “shoot squad,” which investigates non-homicide shootings. On January 13, 2014, he responded to a call for service at 133 Madeira Drive involving a shooting and assumed responsibility for the investigation as a detective of the “shoot squad.” Deputy Favaloro - learned that the shooting occurred at 117 Madeira so he instructed Crime Scene to collect evidence and photograph the scenes at both addresses. D¿puty Favaloro’s team found casings and a projectile in a bedroom.
Deputy Favaloro léarned that the suspect had the nickname of “Noonie” and, 'through investigation, learned that an individual’ with that nickname lived in the Avondale aréa. A photographic lineup with that individual’s picture was compiled. On January 30, 2014, Deputy Favaloro showed the lineup to the victim, and she positively *875 identified defendant as the perpetrator. He also collected a letter that the victim wrote describing the incident and identifying “Noonie” as the shooter. Afterward, Deputy Favaloro obtained an arrest warrant for defendant. In April of 2014, defendant was arrested in Texas and extradited to Jefferson Parish.
Jené Rauch, the Supervisor of the Firearm and Tool Mark Section of the Jefferson Parish Crime Lab, was qualified as an expert in the field of firearm examination and identification. Ms. Rauch reviewed eight 9-mm caliber fired cartridge casings and two projectiles connected with this incident.[2] Ms. Rauch testified that, based on the markings, all of the casings were fired from the same weapon. Further, both copper-jacketed projectiles were fired from the same weapon. Moreover, both projectiles were consistent with .38-class ammunition, and were marked with six lands and grooves with a right twist. No firearm was recovered in this case.
1 (After hearing the testimony and reviewing the evidence, the twelve-person jury found that defendant was guilty of attempted second degree murder, being a felon in possession of a firearm, and home invasion.
Discussion
On appeal, defendant raises two assignments of error: first, the trial judge erred in denying the Motion to Declare Article 782(A) unconstitutional for allowing a non-unanimous verdict in a felony trial; and, second, the evidence was insufficient to support the verdict.
In his second[3] assignment of error, defendant argues that the evidence was insufficient to support the verdict. He contends that the victim identified him and Léster Stevenson as the perpetrators, but, because the State did not charge Mr. Stevenson, the State did not trust the victim’s identification of Mr. Stevenson. Defendant argues that, if the State believes that the victim is wrong about one co-perpetrator, it is irrational and illogical to trust her identification of another perpetrator in the same incident. Defendant argues that the victim identified Mr. Stevenson after randomly seeing him at the courthouse about eight months after the incident, which was completely free of any improper influence or suggestion as- might occur in a law enforcement-initiated identification procedure.
Defendant also contends that the evidence was insufficient to support the verdict because the weapon used to assault *876 the victim was in the hands of some other perpetrator on December 31, 2013, a date on which he was in jail. Defendant argues that this fact serves to further undermine the rationality of crediting the victim’s identification of him beyond a reasonable doubt.
| nIn reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La. 10/17/00), 772 So.2d 78, 83; State v. Washington, 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray, 12-684, p. 5 (La.App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. State v. Caffrey, 08-717, p. 6 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 203, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297.
IvThe credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan, 97-21, p. 7 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
In the instant case, defendant was convicted of attempted second degree murder, possession of a firearm by a convicted felon, and home invasion. On appeal, defendant does not argue that the State failed to prove the elements of the crimes; rather, he contends that the State failed to negate any reasonable probability of mis-identification of him as the perpetrator.
Identification
With respect to the victim’s identification of defendant as the perpetrator, the record reflects that Ms. Poret testified that she recognized one of the perpetrators as “Noonie,” whom she later identified as defendant. She asserted that she knew defendant from grade school and had known him for more than ten years. Ms. Poret was clear from the earliest moments after the incident that there were two assailants, who both shot her. Ms. Poret never wavered in her identification of defendant as the shooter. We find that a rational trier of fact could have found that the State negated any reasonable probabil *877 ity of raisidentification of defendant as the perpetrator.
Further, on appeal, defendant contends that if the victim’s identification of the co-perpetrator could be so unequivocally wrong, it is irrational and illogical to believe beyond a reasonable doubt her identification of defendant in the exact same incident. However, it is clear that the identity of the other perpetrator was not at issue at trial and is not at issue on appeal. This assignment of error lacks merit.
Moreover, a rational trier of fact could have found that there was sufficient evidence under the Jackson standard to prove the elements of each of defendant’s convictions.
^Attempted Second Degree Murder
Under La. R.S. 14:30.1, second degree murder is defined as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. See State v. Lewis, 05-170, p. 8 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-757 (La. 12/15/06), 944 So.2d 1277.
The crime of attempted second degree murder requires proof, beyond a reasonable doubt, of the specific intent to kill a human being and the commission of an overt act in furtherance of that goal. State v. Bannister, 11-602, p. 7 (La.App. 5 Cir. 2/14/12), 88 So.3d 628, 634, writ denied, 12-628 (La. 6/15/12), 90 So.3d 1060. This Court has recognized that although specific intent to inflict great bodily harm is sufficient to support a second degree murder conviction, attempted second degree murder requires a specific intent to kill. Id.
La. R.S. 14:27 provides that any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and, it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Durand, 07-4, p. 9 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ denied, 07-1545 (La. 1/25/08), 973 So.2d 753.
With respect to the attempted second degree murder conviction, specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person, State v. Hoffman, 98-3118, pp. 48-49 (La. 4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000); State v. Batiste, 06-869, p. 6 (La.App. 5 Cir. 4/11/07), 958 So.2d 24, 27, and from the extent and severity of the victim’s injuries, State v. Stacker, 02-768, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, writ denied, 03-411 (La. 10/10/03), 855 So.2d 327.
In the instant case, Ms. Poret testified that defendant shot her multiple times. Additionally, Dr. Marr testified that Ms. Poret was the victim of multiple ballistic wounds to multiple areas of her body, including her face, neck, chest, and extremities. He explained that she had internal injuries from the gunshot wounds, including injuries to her hypopharynx where the esophagus started and to her carotid artery, the main artery bringing blood to the brain. Dr. Marr asserted that the victim underwent multiple surgeries by him, a vascular surgeon, and a specialist in facial *878 reconstruction. We find that a rational trier of fact could have found .that the evidence was sufficient under the Jackson standard to prove the elements of the crime of attempted second degree murder.
Possession of a Firearm by a Convicted Felon
La. R.S. 14:95.1 provides that it is unlawful for any person who has been convicted of a crime of violence as defined in La, R.S. 14:2(B), or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1(A).
ImLa. R.S. 14:2(B) defines, “crime of violence” as an offense that has, as. an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. The statute thereafter provides a list of enumerated offenses, including but not limited to aggravated second degree battery, as “crimes of violence.”
To support a conviction under La. R.S. 14:95.1, the State must prove that the defendant possessed the firearm, that the defendant has a prior conviction for an enumerated felony, that the defendant possessed the firearm within ten years of the prior conviction, and that the defendant had the general intent to commit the crime. State v. Hernandez, 11-146, p. 5 (La.App. 5 Cir. 11/29/11), 82 So.3d 327, 331, writ denied, 12-33 (La. 8/22/12), 97 So.3d 357.
With respect to defendant’s conviction of being a felon in possession of a firearm, the record shows that: 1) defendant possessed the firearm; 2) defendant has a prior conviction for a felony; 3) defendant possessed the firearm within ten years of the prior conviction; and 4) defendant had the general intent to commit the crime.[4] See Hernandez, supra.
At trial, the victim testified that defendant had a gun in his possession when he shot her multiple times causing her serious injuries, thus satisfying the first and fourth elements. As to the second element, the record reflects that defendant has a prior conviction for aggravated second degree battery, a crime of violence as defined in La. R.S, 14:2(B)(31). The record further shows that defendant | n possessed the firearm within ten years of the prior conviction, thus satisfying the third element.
The record reflects that the State and the defense stipulated that the fingerprint expert would have testified that she took fingerprints from defendant the morning of trial and compared those fingerprints with, a certified packet of conviction under case number. 11 — 819, wherein defendant *879 pled guilty on May 23, 2011, to possession of a firearm while committing a crime of violence, a violation of La. R.S. 14:95(E), and that defendant was the same person who pled guilty on that date to that charge.
Based on the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to prove the elements of the crime of felon in possession of a firearm.
Home Invasion
Defendant was also convicted of home invasion in violation of La. R.S. 14:62.8. To convict defendant of home invasion, as defined by that statute, the State had to prove beyond a reasonable doubt the following elements: (1) defendant entered 117 Madeira Drive without permission or authorization; (2) the place he entered was an inhabited dwelling or a place used in whole or in part as a home by another person; (3) a person was present in the home when defendant made entry; and (4) defendant had the intent to use force or violence against a person in the home or to vandalize, deface, or damage the property. See State v. Hart, 10-1614, p. 6 (La.App. 4 Cir. 11/2/11), 80 So.3d 25, 30, writ denied, 14-1334 (La. 4/17/15), 168 So.3d 393.
With respect to defendant’s conviction of home invasion, the record reflects that the victim indicated defendant entered her home without permission or authorization, that the place he entered was used as a home, that the victim was present in the home when defendant entered it, and that defendant had the intent to 112use force or violence against the victim in the home. We find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to prove the elements of the crime of home invasion.
Based on the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient to support - the convictions and that the State negated any reasonable probability of misidentification of defendant as the perpetrator. This assignment of error lacks merit.
Returning to defendant’s first assignment of error, he argues that the trial court erred in denying his motion to declare La. C.Cr.P. Article 782(A) unconstitutional for allowing a non-unanimous verdict in a felony trial. Defendant points out that Article 782(A) provides that ten of twelve jurors must concur to render a verdict in cases where punishment is necessarily confinement at hard labor. Defendant argues that a non-unanimous verdict violates due process and the U.S. Sixth and Fourteenth Amendments.[5]
The record reflects that defendant filed his Motion to Declare Article 782(A) Unconstitutional in the trial court before trial. We further note that the jury unanimously convicted defendant of attempted second degree murder and lacks standing to challenge the constitutionality of La. C.Cr.P. art. 782(A) with respect to that count. In State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 545-46, writ denied, 11-1753 (La. 2/10/12), 80 So.3d 468, cert. denied, 568 U.S. 838, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012), the defendant was convicted of two counts of second degree murder under La. R.S. 14:30.1 by a unanimous twelve-person jury verdict. This Court found that the defendant did not have standing to challenge the constitutionality of La. C.Cr.P. art. 782(A) because he was convicted by a unanimous jury verdict on *880 both counts. Jacobs, 67 So.3d at 535 (citing Burch v. Louisiana, 441 U.S. 130, 132 n.4, 99 S.Ct. 1623, 1624, 60 L.Ed.2d 96 (1979)).
11sWith respect to defendant’s two remaining convictions which require confinement at hard labor, the jury did return a verdict of eleven in favor of guilty as charged and one in favor of not guilty and, thus, defendant has standing to raise this challenge.
La. C.Cr.P. art. 782 provides, in pertinent part, that:
A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.
Statutes are presumed to be constitutional and the party challenging the validity of the statute bears the burden of proving it is unconstitutional. State v. Hatton, 07-2377, p. 13 (La. 7/1/08), 985 So.2d 709, 719. As a result of this presumption, a party wishing to challenge the constitutionality of a statute must do so properly. Id. While there is no single procedure for attacking the constitutionality of a statute, the Louisiana Supreme Court has held that in order to properly confect a constitutional challenge, a party must raise the issue in the trial court in a pleading asserting the grounds for the alleged unconstitutionality. Id.
La. C.C.P. art. 1880 provides that if a statute is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard. While the attorney general is not a necessary party that must be joined in the suit, he must be served in actions seeking a declaration of unconstitutionality of a statute. State v. Veal, 11-44, p. 6 (La.App. 5 Cir. 12/28/11), 83 So.3d 211, 214, writ denied, 12-2373 (La. 4/5/13), 110 So.3d 1072 (citing Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So.2d 859, 864). The defendant complied with the correct procedure of notifying the attorney general of his challenge to the constitutionality of the statute.
In Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court, in a plurality decision, determined that the | ^United States Constitution did not mandate unanimous jury verdicts in state court felony criminal trials. Bonilla, supra. In his brief, defendant submits that “the Apodaca decision was wrong, a wrong which will be rectified by the Supreme Court.” He argues that the decision was “deeply fractured” and “internally contradictory.”
Nevertheless, this issue has been addressed numerous times by the Louisiana Supreme Court, this Court, and other appellate courts in this State, and all have rejected the argument. These cases include, but are not limited to: State v. Bertrand, 08-2215 (La. 3/17/09), 6 So.3d 738, 743; State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, 613-14, writ denied, 12-2478 (La. 4/19/13), 111 So.3d 1030; Bonilla, supra; State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, 1151, writ denied, 10-934 (La. 11/19/10), 49 So.3d 396, cert. denied, 562 U.S. 1217, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011); State v. Baumberger, 15-1056 (La.App. 3 Cir. 6/1/16), 200 So.3d 817, 832-34; and State v. Blueford, 48,823 (La.App. 2 Cir. 3/5/14), 137 So.3d 54, 69, writ denied, 14-0745 (La. 11/21/14), 160 So.3d 968, cert. denied, — U.S. —, 135 S.Ct. 1900, 191 L.Ed.2d 770 (2015).
In Bertrand, supra, the Louisiana Supreme Court reversed the district court, which held Article 782 was unconstitutional and explained the following:
*881 Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12-person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
State v. Bertrand, 08-2215 at 8, 6 So.3d at 743.
As an intermediate appellate court, this Court is obliged to follow the precedent established by the Louisiana Supreme Court. See State v. Thomas, 10-220, pp. 12-13 (La.App. 5 Cir. 11/9/10), 54 So.3d 678, 686, writs denied, 10-2758 (La. 4/25/11), 62 So.3d 89 and 10-2752 (La. 5/20/11), 63 So.3d 974. In light of the foregoing, we find that the trial judge did not err in denying defendant’s motion to declare Article 782(A) unconstitutional.
Errors Patent
As we routinely do, we have reviewed the record[6] for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990) and found the following errors patent in this case.
Mandatory Fine
The trial judge failed to impose the mandatory fines on count two (possession of a firearm by a convicted felon) and count three (home invasion). La. R.S. 14:95.1(B) provides for a mandatory fine of “not less than one thousand dollars nor more than five thousand dollars.” La. R.S. 14:62.8(B)(2) provides for a mandatory fine of “not more than seven thousand dollars.”
Although this Court has the authority to correct an illegal sentence at any time, La. C.Cr.P. art. 882, the authority to correct an illegally lenient sentence is permissive rather than mandatory. While this Court has held that statutes providing for a fine of “not more than” a specified amount do require a mandatory fine, this Court has also recognized that the matter is not free from doubt. State v. Kerlec, 06-838 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815, writ denied, 07-1119 (La. 12/7/07), 969 So.2d 626. In the instant case, defendant is represented by the Louisiana Appellate Project. Therefore, we decline to exercise our authority to remand for correction of the illegally lenient sentences due to defendant’s indigent | ^status. See State v. Ruffin, 13-393 (La.App. 5 Cir. 12/12/13), 131 So.3d 330, 341, writ denied, 14-0066 (La. 6/13/14), 140 So.3d 1194.
Commitment/Consistency — Adjudication Date
Both the original commitment order and the multiple offender commitment order list defendant’s adjudication date as July 18, 2016; however, his adjudication date was the final day of trial, which was June 23, 2016. Because there is an inaccuracy in the uniform commitment orders, we remand the matter and instruct the trial judge to correct the uniform commitment *882 orders to conform to the transcript. Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected uniform commitment orders to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2)).
Conclusion
Based on the foregoing, we affirm defendant’s convictions and sentences and remand for correction of the uniform commitment orders.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF THE UNIFORM COMMITMENT ORDERS

. Ms. Poret explained that, she received fifteen gunshot wounds that night and, at the time of trial, she had undergone more than ten surgeries to remove shrapnel, to repair wounds, and to reconstruct her face and other injured areas. Further, she still had bullets and bullet fragments in her body and she was slated for more surgery, Ms. Poret testified that, after she got out of the hospital, she used prescription pain medication; Xanax, for her frequent nightmares; and heroin.

. Ms. Rauch discovered that the markings on the cartridges and projectiles in this case are consistent with markings on the cartridges and projectiles from a shooting on December 31, 2013, just two weeks before this incident. In sum, the same gun fired bullets in an incident in December and in this incident, but no gun was recovered in either case. The State and the defense, thereafter, stipulated that, because defendant was incarcerated on December 31, 2013, he was not the shooter in the December case.

. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the' evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, the sufficiency of the evidence is addressed before defendant's other assignment. See also State v. Nguyen, 05-569, p. 6 (La.App. 5 Cir. 2/3/06), 924 So.2d 258, 262.

. La. R.S. 14:10 provides that .general intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the 'prescribed criminal consequences as reasonably certain to result from his act or failure to act.

. The Louisiana Attorney General was notified of this assignment of error and declined to respond at this time.

. However, it is noted that the Louisiana Supreme Court has held that “a habitual offender hearing should not be considered part of the record for purposes of error patent review and that a defendant must assign as error any perceived defect in the proceedings to preserve appellate review of the claimed error.” State v. Moore, 12-0102 (La. 5/25/12), 90 So.3d 384, 385 (per curiam ).