STATE OF LOUISIANA

VERSUS

DERMAINE NORMAN

NO. 18-KA-723

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 12,337, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING


December 18, 2019


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Marc E. Johnson, and Robert A. Chaisson


**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS**
 **FHW**
 **MEJ**
 **RAC**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Bridget A. Dinvaut
    J. Philip Prescott, Jr.

COUNSEL FOR DEFENDANT/APPELLANT,
DERMAINE NORMAN
    Meghan H. Bitoun

**WICKER, J.**

Defendant, Dermaine Norman, appeals his conviction for conspiracy to commit second degree murder as obtained in violation of his constitutional privilege against self-incrimination and right to a unanimous jury verdict. Defendant further claims that the appellate record is insufficient. We affirm his conviction and thirty-three year sentence as we find no merit to defendant's alleged violations of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments, and find that the supplemented appellate record provides the necessary information for a complete review. As there are errors in the Uniform Commitment Order, we remand this case to the trial court for correction of that order.

## FACTS

On July 17, 2011, Frank Lewis was shot in front of his house on 134 East 14th Street in Reserve, Louisiana, while leaving for work. St. John's Sheriff's Office deputies collected eight 9 mm shell casings in front of the residence. During an autopsy, it was revealed that the cause of death was trauma due to a projectile, which was recovered from the victim's body. The victim had been shot three times, once in the left arm and twice in the left buttock.

St. John's Sheriff's Office detectives arrested Carlton Brown as a suspect. Brown admitted to driving Kentrell Bailey from Laplace to Reserve at the request of defendant in exchange for $200, money defendant previously owed him, as well as gas money.[1] He dropped Bailey at a residence and drove down the street. Brown thought he heard gunshots, but attributed the noise to the projects next door. Bailey returned to the vehicle and told Brown that the person he was looking for

---

[1] Brown testified that he knew defendant from school.

18-KA-723                                        1

was not home. After noticing a change in Bailey's demeanor, Brown did not question Bailey further.[2]

Defendant was interviewed on June 17, 2011, by Detectives Scott Guillory and Jerry Fountain.[3] Defendant told the detectives that he believed the victim, his former co-worker, had provided information that resulted in defendant being shot in the head on his way to work three weeks ago. Defendant was also questioned several times on July 12, 2011, by the victim's sister Eliza Eugene and Detective Fountain; Detective Guillory and Captain Randall Joseph; and again by Detective Fountain.[4] On August 5, 2011, Detective Guillory and Detective Hymel interviewed defendant, and after he waived his rights, defendant admitted that he asked Brown to give his cousin Bailey a ride to Reserve to shoot the victim.[5] Defendant stated that he had forgiven Bailey an $850 debt owed to him to take care of the situation.

William D. O'Regan, III, the chief prosecutor for the cases against Bailey and defendant for the St. John's District Attorney's Office ("D.A.'s Office"), extended an immunity agreement to defendant to obtain a conviction against Bailey. On August 29, 2013, O'Regan and Captain Larry LeBlanc, an investigator at the D.A.'s Office, met with defendant and his then-counsel Ed Greenlee. Defendant had driven to the meeting at the D.A.'s office from Texas where he was living while released on bond. O'Regan testified that he met with defendant because he wanted to know what defendant's testimony would be at trial before

---

[2] On February 27, 2012, Brown pled guilty to accessory after the fact for his involvement and received a five-year sentence.

[3] This statement, referred to as Statement A in defendant's motion to suppress, was admitted into evidence.

[4] These statements were suppressed after a hearing on defendant's motion to suppress for failure to provide reliable evidence to suggest that defendant waived his rights.

[5] This statement, referred to as Statement E in defendant's motion to suppress, was found admissible by the trial court.

granting defendant immunity. O'Regan testified that defendant related to him that, believing the victim had put a hit out on him, he enlisted Bailey to kill the victim and gave him cash or forgave a debt. Defendant told O'Regan that after the murder, Bailey called and said "it was done." Defendant thereafter signed the immunity from prosecution agreement, accepting the offer in exchange for his "accurate, complete, and truthful testimony" at Bailey's trial.

Defendant then provided a recorded statement to Detective Fountain with his attorney present. In that statement, defendant related that he told Bailey that he thought he was set up by the victim, to which Bailey responded "somebody's gotta go." Defendant understood this to mean that the victim would be shot. Bailey offered to take care of it, and defendant thought that Bailey would "rob him, shoot him." Defendant hesitated to speak further when Detective Fountain directly asked him about the details of the deal. Defendant and his attorney spoke privately outside of Detective Fountain's presence. Upon their return, Mr. Greenlee related defendant's concerns that the statement was "not something that is designed or set up to have new charges filed against him or come back against him, . . .that anything he says today and when he testifies on the ninth or any other time he has to go to court on this case, cannot and will not be used against him." Mr. Greenlee sought assurances that after giving the statement, defendant would be free to return to Texas and "no new charges or any charges arising out of any of this statement or testimony will ever be brought against him."

Detective Fountain stated that, according to the D.A.'s office, after giving his statement defendant "will be released and he'll be allowed to go back to Texas as long as he appears on the ninth for the trial to testify." He further assured defendant that no federal charges would be brought against defendant and his

material witness warrant would be recalled. Defendant then told Detective Fountain that he paid Brown $200 in advance to pick up Bailey. Brown and Bailey went to the victim's house on two occasions; "Frank got killed" on their second trip. It was understood that Bailey's debt would be cleared upon Bailey "taking care of it."

After signing the immunity agreement, Captain LeBlanc served defendant with a subpoena for Bailey's trial date. Defendant, however, failed to appear on Monday, September 9, 2013, when the D.A.'s office would have made arrangements for him to stay at a hotel outside of the parish. Captain LeBlanc spoke to defendant on multiple occasions on September 9th, and defendant told him that he was having car troubles and he was afraid for his life. When defendant failed to appear for Bailey's trial on the morning of September 10, 2013, the State allowed Bailey to plead guilty to one count of conspiracy to commit second degree murder and one count of attempted possession of a firearm by a convicted felon with a sentence of five years imprisonment on each count to be served concurrently.

## PROCEDURAL HISTORY

On September 17, 2012, the St. John District Attorney filed a bill of information charging defendant, Dermaine Norman, with conspiracy to commit second degree murder in violation of La. R.S. 14:26 and La. R.S. 14:30.1. On October 4, 2012, defendant was arraigned and pled not guilty.

On August 29, 2013, defendant entered into an immunity agreement with the D.A.'s Office in exchange for immunity for the charged offense, and the terms of the agreement detailed that he would testify at his co-conspirator Kentrell Bailey's

trial. On September 10, 2013, when defendant failed to appear, the State orally voided the immunity agreement and a bench warrant was issued for defendant.

On March 26, 2014, defendant filed a motion to suppress various statements made to St. John's Sheriff's Office detectives.[6] The State filed an objection to the motion, arguing that the motion lacked specificity and should be denied. On October 13, 2014, defendant supplemented his March 2014 motion to suppress, identifying six specific statements he sought to suppress. Of note, he sought to suppress the August 29, 2013 recorded statement made to Detective Jerry Fountain at the D.A.'s office wherein he implicated himself and Bailey in exchange for immunity from the State. Defendant's motion to suppress was heard on October 13 and December 8, 2014. On February 27, 2015, the trial court issued a written judgment granting the motion to suppress as to the August 29, 2013 statement because it was not voluntary as it was made during the course of immunity negotiations and defendant had not received *Miranda*[7] warnings before making that statement.[8]

The State sought this Court's supervisory review of the trial court's suppression of the August 29, 2013 statement. On June 25, 2015, this Court granted the State's writ, held that the statement was admissible, and remanded the matter for proceedings consistent with its disposition. *See State v. Norman*, 15-259 (La. App. 5 Cir. 6/25/15) (unpublished writ disposition) (JJ., Wicker, Murphy,

---

[6] Defendant also filed a motion to quash the bill of information on the ground that he had been granted immunity for the offense. On July 24, 2014, the trial court issued a written ruling denying the motion to quash, finding that defendant materially breached the immunity agreement by failing to testify at Bailey's trial.

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)(finding that the Fifth Amendment requires a defendant to be informed of his rights before a custodial interrogation).

[8] After Detective Stevens failed to appear at the hearing to identify his signature on the waiver of rights form used in connection with defendant's July 12, 2011 statement, the trial court found that the State failed to produce reliable evidence to suggest that defendant waived his rights and therefore also suppressed that statement.

18-KA-723                                        5

Johnson). On July 28, 2015, defendant filed a writ with the Louisiana Supreme Court, which was not considered due to its untimely filing. *State v. Norman*, 15-1467 (La. 8/28/15), 174 So.3d 1158.[9]

Subsequently, on May 6, 2016, the State filed a Notice of Intent to Introduce Defendant's Statements. The State indicated its intention to introduce defendant's August 29, 2013 unrecorded statement made to Assistant District Attorney O'Regan and Investigator LeBlanc, as well as the August 29, 2013 recorded statement to Detective Fountain in its case-in-chief. On May 9, 2016, defendant filed an opposition, stating that the statement made to Mr. O'Regan and Mr. LeBlanc was not previously the subject of a suppression motion, and the State had the burden of proving the admissibility of the statement. The statement was ultimately determined to be admissible by this Court.[10]

On May 9, 2016, defendant filed a motion to declare La. C.Cr.P. art. 782(A) and La. Const. art. 1, § 17 unconstitutional. Defendant argued that the statutes were unconstitutional to the extent they allowed for a non-unanimous verdict in non-capital felony cases. The trial court denied the motion after a hearing.

Defendant filed a Motion to Suppress Statement Given Under Inducement or Promise on May 9, 2016. Defendant once again challenged his recorded statement to Detective Fountain. On May 17, 2016, the trial court issued a written ruling, finding that it would permit the use of defendant's August 29, 2013 statement to Detective Fountain as *res judicata*.

---

[9] Defendant sought reconsideration of the court's ruling, which was also denied. *State v. Norman*, 15-1467 (La. 10/9/15), 178 So.3d 996.

[10] The trial court ruled that the unrecorded statement made to Mr. LeBlanc and Mr. O'Regan was inadmissible at trial due to the State's late notice to use it and failure to disclose it earlier. On July 29, 2016, this Court granted the State's application for supervisory review, holding that the trial court erred in finding the State did not properly give notice that it would use the statement. *See State v. Norman*, 16-351 (La. App. 5 Cir. 7/29/16) (unpublished writ disposition) (JJ., Windhorst, Liljeberg, Murphy). The Louisiana Supreme Court denied defendant's writ application on October 10, 2016. *State v. Norman*, 16-1625 (La. 10/10/16), 207 So.3d 411.

18-KA-723                                      6

Trial was held before a twelve-person jury on October 11-12, 2016. During deliberations, the jury requested defendant's recorded statement to Detective Fountain, which the trial judge denied. The jury returned a verdict of guilty as charged, with ten jurors concurring on the record. On December 20, 2016, the State filed a multiple offender bill of information against defendant, alleging that he was a third-felony offender under La. R.S. 15:529.1.

On June 21, 2017, defendant filed a Motion for New Trial under La. C.Cr.P. art. 851(B)(5), arguing that the ends of justice would be served by granting him a new trial. He argued that his inculpatory statements should not have been used against him at trial and their use was a breach of his immunity agreement. Defendant proclaimed that he did not know he was required to make himself available to testify nor did he realize his failure to do so would result in his statement being used against him. On August 22, 2017, the trial court denied the motion for new trial, relying on this Court's ruling on the admissibility of the statement. On October 19, 2017, a multiple bill hearing was held, after which the trial court found that the State presented competent evidence that defendant was a third-felony offender under La. R.S. 15:529.1(D)(2)(b). The trial court then sentenced defendant as a third-felony offender to thirty-three years in the Department of Corrections. Defendant filed a timely motion to appeal.

**DISCUSSION**

Defendant alleges three assignments of error.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that the admission of his August 29, 2013 statement to Detective Fountain resulted in his conviction being obtained in violation of his right against self-incrimination. He asserts that this

Court erred in its reversal of the trial court's ruling since there was no explicit agreement between the parties that the statement would be used against him if he breached the agreement. He avers that review of the statement indicates that this Court misinterpreted the exchange that occurred between Detective Fountain, Mr. Greenlee, and himself, and the record fails to support this Court's prior finding. Defendant further asserts that the admission of his statement was not harmless error as it was important to the jury's determination of his guilt.

At the October 23, 2014 hearing on the motion to suppress, Detective Fountain testified that he did not advise defendant of his rights before taking the recorded statement on August 29, 2013, because defendant's attorney, Mr. Greenlee, was present and defendant was not in police custody. Mr. Greenlee testified that it was his understanding that defendant provided the statements based on the promise of immunity. On December 8, 2014, the second day of hearings on defendant's motion to suppress, defendant argued that the State failed to prove that the August 29, 2013 statement was voluntary and that it was made solely based upon the promise of immunity and release from jail. The trial court in its February 27, 2015 judgment suppressed the August 29, 2013 statement, finding that it was not voluntary because defendant was induced to make it by a promise that the State would not prosecute him in exchange for his testimony. The court found that the State had not shown the statement was freely given or that the defendant was *Mirandized*.

On our prior review of the trial court's suppression of the statement, this Court held that there was no requirement for defendant to receive his *Miranda* warnings before making the statement, as his counsel was present throughout the entire statement and even left the room with defendant to confer in private. This

Court additionally held that the statement was freely and voluntarily made, as the recording of the statement reflects that the terms of the agreement were discussed, including the condition that defendant return to testify at Bailey's trial, despite the fact that the actual written immunity agreement did not address the recorded statement. And finally, this Court held that defendant's failure to appear in court to testify on the agreed upon date was a breach of the negotiated immunity agreement not to use the statement against him and was thus admissible against him. *See State v. Norman*, 15-259 (La. App. 5 Cir. 6/25/15) (unpublished writ disposition) (JJ., Wicker, Murphy, Johnson).[11]

Under the doctrine of "law of the case," an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. *State v. Falcon*, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 87-88, *writ denied*, 14-0769 (La. 11/14/14), 152 So.3d 877; *State v. Caulfield*, 10-769 (La. App. 5 Cir. 5/24/11), 67 So.3d 600, 607; *State v. Hollimon*, 04-1195 (La. App. 5 Cir. 3/29/05), 900 So.2d 999, 1000. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *Id*.

We do not find any additional evidence in the subsequent trial record that would suggest that our prior determination on this issue was patently erroneous or produced unjust results. We therefore decline to reconsider our previous ruling regarding the motion to suppress. Our previous determination is consistent with the standard set out by the Louisiana Supreme Court for admissibility of statements given pursuant to immunity agreements in *State v. Edmondson*, 97-2456 (La.

---

[11]Judge Johnson dissented with reasons, opining that he could not find, in light of the abuse of discretion standard and based on the writ application, that the trial court erred in presuming defendant was in a custodial interrogation at the time he gave his statement at the D.A's office.

7/8/98), 714 So.2d 1233. The Louisiana Supreme Court has held that admissibility is initially dependent upon the source of the immunity. *Id.* at 1237. Because statutory immunity may be "unilaterally imposed" by the State to compel a witness to testify, the subsequent use of that testimony against the witness is prohibited due to the displacement of his invoked Fifth Amendment privilege against self-incrimination. *Id.* Informal immunity agreements, which are "bargained for," however, do not necessarily implicate the Fifth Amendment as they are contractual. *Id.*[12] Therefore, to be admissible, the defendant's statements only need to be free and voluntary under "the totality of the circumstances." *Id.* at 1239.

While La. R.S. 15:451 requires that statements must not be made "under the influence of fear, duress, intimidation, menaces, threats, inducements or promises," the Louisiana Supreme Court has stated that "any inducement offered to the defendant is but one fact, albeit an important one, in that analysis." *Edmonson*, 714 So.2d at 1239 (citing *State v. Lewis*, 539 So.2d at 1201-02 (La. 1989)). We previously found the statement to be voluntary, as defendant's statements were the product of a "free and unconstrained choice" where he had "potential to gain, something from an exchange, and where no fraud or force is involved." *State v. Norman*, 15-259 (La. App. 5 Cir. 6/25/15) (citing *Edmonson*, 714 So.2d at 1239-40).

Our prior ruling is not patently erroneous requiring reconsideration. Furthermore, the decision to admit the statement did not produce unjust results.

---

[12] A contractual analysis of the immunity agreement in this case is not possible as the agreement does not address the use of any recorded statements provided by the defendant, distinguishing this case from those cited by the defendant's brief. In *State v. Lewis*, 539 So.2d 1199, 1205 (La. 1989) the defendant's agreement stated that anything he communicated in connection with the plea agreement would not be used against him. The Louisiana Supreme Court found the statements arose out of and were demanded by the agreement. In *State v. Gross*, 621 So.2d 130, 133 (La. 1993) the defendants "acknowledged that if they did not fulfill the terms of the agreement their statements could be used as evidence in any subsequent prosecution."

This confession was not defendant's only incriminating statement. The jurors heard the testimony regarding defendant's prior confession on August 5, 2011 to Detective Hymel, defendant's statements to Mr. O'Regan, as well as defendant's request to Mr. Brown. Therefore, we decline to reconsider our prior ruling that the admission of defendant's statement to Detective Fountain was not a violation of his right against self-incrimination. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant argues that his conviction was returned by a non-unanimous jury verdict violating his Sixth and Fourteenth Amendment constitutional rights. He points out that the United States Supreme Court is currently reconsidering the issue in *Ramos v. Louisiana*[13] and has reviewed this issue only once, over forty years ago in *Apocado v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), which resulted in a plurality decision.

On May 9, 2016, defendant filed a motion to declare La. C.Cr.P. art. 782(A) and La. Const. art. 1, § 17 unconstitutional to the extent they allowed for a non-unanimous verdict in this non-capital felony case. The motion was heard that same date, and the State argued that the motion should be denied on its face because the Louisiana Attorney General's Office was not served in accordance with La. C.C.P. art. 1880. *State v. Saulny*, 16-734 (La. App. 5 Cir. 5/17/17), 220 So.3d 871, 880, *writ denied*, 17-1032 (La. 4/16/18), 240 So.3d 923. The trial court denied the motion, stating that it had visited the issue many times and was not persuaded by the arguments presented.

---

[13] *State v. Ramos*, 16-1199 (La. App. 4 Cir. 11/2/17), 231 So.3d 44, 54, *writs denied*, 17-2133 (La. 6/15/18), 257 So.3d 679, and 17-1177 (La. 10/15/18), 253 So.3d 1300, *cert. granted*, – U.S. –, 139 S.Ct. 1318, 203 L.Ed.2d 563 (2019) is currently before the Supreme Court of the United States to address whether a state criminal defendant has the right to a unanimous jury verdict pursuant to the Sixth Amendment of the United States Constitution as incorporated through the Fourteenth Amendment of the United States Constitution.

Following the jury's verdict, defendant requested polling of the jury. The trial court polled the first ten jurors, all of whom indicated that they had returned a verdict of guilty. Having reached a concurrence of ten, the trial court found that the verdict was legal and did not poll the remaining two jurors. Thus, it is not clear whether the jury's verdict was unanimous.

While La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A) were recently amended to require a unanimous jury verdict of twelve for those offenses in which punishment is necessarily confinement at hard labor, the language of those amendments explicitly provides that they are applicable to offenses that occur on or after January 1, 2019. Defendant's offense was committed on June 17, 2011, and therefore, the pre-amendment versions of the statutes apply. The constitutionality of the previous versions of La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A) have been addressed by many courts, all of which have rejected the argument at this time. *See Apodaca v. Oregon, supra; State v. Bertrand*, 08-2215, 08-2311 (La. 3/17/09), 6 So.3d 738, 742-43; *State v. Brooks*, 12-226 (La. App. 5 Cir. 10/30/12), 103 So.3d 608, 613-14, *writ denied*, 12-2478 (La. 4/19/13), 111 So.3d 1030. As an intermediate appellate court, this Court is obliged to follow the precedent established by the Louisiana Supreme Court. *See State v. Thomas*, 10-220 (La. App. 5 Cir. 11/9/10), 54 So.3d 678, 686, *writs denied*, 10-2758 (La. 4/25/11), 62 So.3d 89 and 10-2752 (La. 5/20/11), 63 So.3d 974. Therefore, even if defendant's verdict was not unanimous, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, defendant argues that his right to judicial review has been denied because the appellate record is incomplete. He asserts that this Court's failure to order supplementation of the record with case number 2011-

CR-302 has precluded him from developing potentially critical issues on appeal, such as whether his right to a speedy trial was violated and whether the allotment and transfer of his case was a maneuver by the State to ensure the judge of its choice was selected. He further asserts that his inability to fully review the hearing transcript from the multiple bill proceeding has prevented him from asserting any illegality in his multiple offender proceeding.

La. Const. art. I, § 19 provides that no person shall be subjected to imprisonment without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. La. C.Cr.P. art. 843 requires, in all felony cases, the recording of "all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."

A defendant has a right to a complete transcript of the trial proceedings, particularly where, as in this case, appellate counsel did not represent defendant at trial. Material omissions from trial court proceedings bearing on the merits of an appeal require reversal; however, a slight inaccuracy in a record or an inconsequential omission that is immaterial to a proper determination of the appeal does not require reversal of a conviction. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. *State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, 773, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); *State v. Lampkin*, 12-391 (La. App. 5 Cir. 5/16/13), 119 So.3d 158, 166, *writ denied*, 13-2303 (La. 5/23/14), 140 So.3d 717. "The materiality of a given omission is measured by the prejudicial effect of the omission on the defendant in

accessing the full scope of appellate review." *State v. Pernell*, 13-0180 (La. App. 4 Cir. 10/2/13), 127 So.3d 18, 28, *writ denied*, 13-2547 (La. 4/4/14), 135 So.3d 640.

*Speedy Trial Right*

Defendant alleges that failing to supplement the record with the previous consolidated case prevents counsel from determining whether his right to a speedy trial was violated. In *State v. Cowger*, 581 So.2d 283, 286 (La. App. 5 Cir. 1991), this Court noted that any allegation of a violation of La. C.Cr.P. art. 701 is moot after trial and conviction. Thus, even if defendant's right to a speedy trial was violated, the issue is now moot. *See State v. Johnson*, 08-1156 (La. App. 5 Cir. 4/28/09), 9 So.3d 1084, 1091, *writ denied*, 09-1394 (La. 2/26/10), 28 So.3d 268.

*Transfer of Case*

Defendant alleges that failing to supplement the record with the previous consolidated case also prevents counsel from fully reviewing the allotment and transfer of his case and recusal of judges. The present appellate record reveals the history of allotment and transfer of this case. A review of the minute entries indicates that this matter was first allotted to Division "A," realloted to Division "B," and was then allotted to and remained in Division "C." The record contains a written objection filed by defendant's prior counsel Richard Brazen, Jr., as well as the parties' arguments in 2012 as to the reallotment and transfer of the cases, and the trial court's ruling. The record additionally reflects the trial judge's reconsideration and reversal of the ruling and the retransfer of this case to Division "A" on November 26, 2012, and her reasons for the ruling. The record contains the State's motion to recuse Judge Jasmine, noting that she had recused herself due to her relationship with a State witness and Bailey. Therefore, this argument is

without merit as the supplemental record is sufficient for defendant to fully raise an argument about realottment and transfer of this case.

*Multiple Bill Proceeding*

A supplement to this record was filed on March 7, 2019, containing the multiple bill proceeding. On June 13, 2019, appellate counsel filed a Motion for Complete and Accurate Transcript and Motion to Supplement the Record, wherein she argued that despite supplementation of the multiple bill hearing transcript, it still appeared that a portion of the proceeding was missing. This Court denied counsel's motion. Defendant fails to show that the proceeding from October 19, 2017 is "incomplete and inaccurate," as our reading of the transcript corroborates the details of the hearing contained in the corresponding minute entry.

In conclusion, defendant has not demonstrated or particularized how he has been prejudiced by the failure of this Court to order supplementation of the appellate record with the record in 2011-CR-302, and it appears that the multiple bill hearing record has been fully supplemented. The record before this Court does not contain any material omissions that would preclude a complete appellate review nor are the transcripts so lacking that defendant's assignments of error could not be addressed. The supplemental record provides the necessary information for a complete review required for defendant to perfect his appeal.

**ERROR PATENT DISCUSSION**

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The State of Louisiana Uniform Commitment Order (UCO) located in the record fails to reflect that defendant received an enhanced sentence on count one and that this matter involved a multiple bill proceeding.

Also, it incorrectly reflects defendant's conviction date as October 19, 2017 (the date he was sentenced); defendant was convicted on October 12, 2016.

Therefore, this matter is remanded to the trial court with instructions for it to correct the inconsistencies in the UCO. We further direct the Clerk of Court for the 40th Judicial District Court to transmit the original UCO to the appropriate authorities and the Department of Corrections' legal department. *See State v. Long*, 12-184 (La. App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142 (citing La. C.Cr.P. art. 892(B)(2)).

CONCLUSION

Declining to reconsider our previous ruling on the admissibility of defendant's statements given pursuant to immunity agreements, we find no merit to defendant's first assignment of error. As the Louisiana Supreme Court has previously found the pre-amendment versions of La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A) to be constitutional, we find no merit to the second assignment of error. We further find no merit to the third assignment of error, which fails to demonstrate material omissions precluding complete appellate review. Therefore, we affirm defendant's conviction and sentence and remand this case to the trial court for correction of the Uniform Commitment Order.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 18, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 18-KA-723

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
HONORABLE BRIDGET A. DINVAUT (APPELLEE)
COLIN CLARK (APPELLEE)

MEGHAN H. BITOUN (APPELLANT)
J. TAYLOR GRAY (APPELLEE)

J. PHILIP PRESCOTT, JR. (APPELLEE)
GRANT L. WILLIS (APPELLEE)

### MAILED
HON. JEFFREY M. LANDRY (APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802